**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Madera, *et al.*,                                             Case No. 3:19-CV-01516

        Plaintiffs

     v.                                                          **ORDER**

KTC Express, Inc., *et al.*,

        Defendants.

This is a personal injury action resulting from a May 25, 2018 collision between a car and a semi-truck.

Defendant Inderpal S. Dhillon was driving the truck in the course of his employment with defendant KTC Express, Inc. (Express) when he hit plaintiff James Madera's vehicle. Mr. Madera alleges that he suffered serious injuries from this accident. He and his wife, Joni, have sued Dhillon, Express, Irwinjit Singh, the owner of now defunct Express, and Dhillon's present company, KTC Logistics LLC (Logistics).

Mr. Madera asserts claims for negligence, statutory violations, respondeat superior/vicarious liability, strict liability, negligent hiring, training and/or supervision, and punitive damages against some or all of those defendants. Mrs. Madera seeks compensation for loss of consortium.

Pending are the parties' motions for summary judgment. (Docs. 66, 77, 78, 79). For the reasons discussed below, I deny plaintiffs' motion in part and grant it in part, and I deny defendants' motions.

## Background

### 1.  KTC Express

Defendant Singh founded the company Express in 2014. (Doc. 62-1, pgID 954). He and his father, Inderpal Dhillon, were the only two employees. (Doc. 61-1, pgID 651). They worked out of Dhillon's house in Bakersfield, California. (*Id.*).

Express was a trucking company. It owned two semi-trucks and two trailers. (*Id.*). Defendant Singh operated the business and drove trucks for Express, while defendant Dhillon simply drove for the company. (*Id.*, pgID 652).

### 2.  Defendant Dhillon's Qualifications

To obtain the training necessary to receive his Commercial Driver's License (CDL), defendant Dhillon testified that he attended Akal Driving School in Bakersfield and completed both coursework and on-the-road training there. (*Id.*, pgID 655). According to plaintiffs, however, there is no record of defendant Dhillon having attended this driving school. (*Id.*).

Defendant Dhillon obtained his CDL in 2014 from the Bakersfield Department of Motor Vehicles, although plaintiffs question its validity. (*Id.*, pgID 656-57; Doc. 66-1, pgID 1164).[1]

### 3.  The Accident

According to Mr. Madera, he was traveling southbound on I-71 in the middle lane, and defendant Dhillon was driving in the left lane. (Doc. 60-1, pgID 600). Mr. Madera recalled seeing a large truck on his left hit him and cause his vehicle to spin out of control. (*Id.*). After his

---

[1] Plaintiffs point out that a grand jury in the Eastern District of California indicted two individuals associated with Akal Driving School with various conspiracy charges related to the issuance of fraudulent driver's licenses. The time period that the indictment covers is June 2012 through August 24, 2016, and defendant Dhillon allegedly attended the school in 2014. *See* https://www.justice.gov/usao-edca/pr/bakersfield-trucking-school-owner-and-former-dmv-employee-charged-scheme-fraudulently.

2

vehicle came to a stop, Mr. Madera woke up to someone, whom he later identified as defendant Dhillon, banging on his car window. (*Id.*). He recalls that defendant Dhillon offered him water, but he could not understand Dhillon, as he was not speaking English. (*Id.*). Mr. Madera then recalls a truck driving away. (*Id.*). Shortly thereafter, Mr. Madera called 911. (*Id.*). Someone handed plaintiff a piece of paper with a license plate number. (*Id.*). Using that number, law enforcement officers were able to connect the truck to Express.

Defendant Dhillon recalls the accident quite differently. Dhillon testified that he was in the middle lane, and Mr. Madera was in the left lane. (Doc. 61-1, pgID 673). He claims that Mr. Madera suddenly merged in front of him to avoid a deer, causing Dhillon to veer off to the left in an attempt to avoid a collision. (*Id.*). According to Dhillon, it was then that he hit Mr. Madera's car with the right front of his truck. (*Id.*).

After the impact, defendant Dhillon testified that both he and Mr. Madera got out of their vehicles. (*Id.* at 662, 673). He then offered Mr. Madera some water and allegedly suggested they exchange information. (*Id.* at 662). He claims that Mr. Madera told him "No. It's just a minor loss. I'll go to my own insurance and take care." (*Id.*). Dhillon further testified that Mr. Madera told him he was not injured, there was no damage to the vehicle, and he did not need help. (Doc. 61-1, pgID 662). Dhillon recalls that he stayed at the scene for 15-20 minutes. (*Id.*). He departed before the police and paramedics arrived. (*Id.*).

Once the paramedics arrived, they transported Mr. Madera to the hospital. (Doc. 60-1, pgID 523-24). Mr. Madera claims that as a result of the accident, he suffered a concussion and continues to experience headaches, memory loss, difficulty speaking, trouble with his vision, numbness, and pain in his back and neck. (*Id.*, pgID 581-86).

### 4.   KTC Logistics

3

After the accident, Express's insurer canceled its policy. (Doc. 62-1, pgID 957). Once that occurred, Express fired defendant Dhillon. (Doc. 61-1, pgID 668).

On November 15, 2018, Dhillon created Logistics, which, like Express, was a trucking business. (*Id.*). Dhillon is Logistics' only driver. (*Id.*, pgID 657). As before, the trucking business operates out of the home that Dhillon shares with Singh in Bakersfield. (*Id.*, pgID 651, 678). Logistics does not own any trucks or trailers; Dhillon leases one truck that he operates. (*Id.*, pgID 680).

In the months following its formation, Logistics transported loads for Express as a sub-hauler. (Doc. 64-1, pgID 1099).

Not long after Logistics began operating, in July 2019, Singh decided to close Express. (Doc. 62-1, pgID 958). He testified that he did so because of "the consequences of [the] accident," which included the higher insurance rates he had to pay because the previous insurer canceled his policy. (*Id.*, pgID 957). On closing the business, Singh destroyed all of Express's records, including records of driving violations, inspections, and tax documents. (*Id.*; Doc. 64-1, pgID 1099). He also paid Dhillon $150,000. (*Id.*). Singh claims those payments compensated Logistic for loads it had transported for Express. (*Id.*).

Defendant Singh maintains that he was not at all involved in the operations of Logistics and did not help his father set up the company or make business decisions. (Doc. 62-1, pgID 963).

**Standard of Review**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4

The movant initially must show the absence of a genuine issue of material fact. *Id.* at 323. "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (quoting *Celotex*, *supra*, 477 U.S. at 325).

Once the movant carries its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In evaluating counter motions for summary judgment, I "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). Summary judgment is proper where "in light of the evidence viewed in the light most favorable to the [nonmovant], no reasonable juror could fail to return a verdict for the [movant]." *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

## Discussion

The following claims are at issue in the parties' motions for summary judgment: 1) negligence, 2) statutory violations/negligence per se, 3) respondeat superior/vicarious liability, 4) strict liability, 5) negligent hiring, training and/or supervision, and 6) punitive damages. The parties additionally disagree as to whether I should pierce the corporate veil to 1) hold defendants Dhillon and Singh individually liable for the actions of Express and 2) hold Logistics liable for the actions of Express as its alter ego.

## 1.  Negligence

Plaintiffs bring their claim for negligence against only defendant Dhillon. They argue that Dhillon has conceded that he was negligent in causing the accident, and therefore, I should grant summary judgment in plaintiffs' favor.

Defendant Dhillon responds that he only conceded the duty and breach aspects of the negligence analysis – he did not concede causation and damages. Therefore, I should deny summary judgment and send this claim to the jury.

In Ohio, the elements of a negligence claim are "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio Dep't of Com.*, 96 Ohio St. 3d 266, 274 (2002). In other words, the plaintiff must show duty, breach, proximate causation, and injury/damages.

The question here, then, is whether there is a genuine issue of material fact as to proximate causation and damages.

There is no question that defendant Dhillon caused the accident at issue in this case. While he attempts to deflect blame to Mr. Madera in his deposition, claiming that Mr. Madera abruptly merged in front of him, Dhillon's attorneys have declined to advance that version of events. In an email dated August 16, 2021, Dhillon's attorney, Mr. Sutherland, confirmed that "Defendants will not argue negligence on the part of Plaintiff for causing the 5/25/18 accident." (Doc. 66-2, pgID 1194). Therefore, defendant Dhillon accepts that the accident was his fault.

Dhillon has not, however, conceded that the accident caused the injuries of which Mr. Madera complains. He further argues that plaintiffs have failed to present evidence, specifically expert testimony, on that issue.

Plaintiffs have, however, presented expert testimony as to causation. They submitted the report of Dr. Barry Layton, who opines that "to a reasonable degree of psychological probability" the "injuries caused by the 5/25/2018 MVC [motor vehicle crash] have resulted in permanent and substantial loss of functioning" to Mr. Madera. (Doc. 83-1, pgID 1557-58). Dr. Layton further states that the "[e]ffects of the MVC are the direct and proximate cause of disabling impairments." (*Id.*, pgID 1559).

Defendant Dhillon neither challenges the doctor's qualifications to render his opinion; nor has he provided contradictory expert testimony as to causation. Therefore, the only issues left in dispute as to plaintiffs' negligence claim are the extent of Mr. Madera's injuries and the resulting damages, if any.

I thus deny plaintiffs' motion for summary judgment on negligence (Count I), as the jury must decide these remaining issues.

### 2.  Negligence Per Se

Plaintiffs next bring a claim against defendant Dhillon for negligence per se. They argue that he violated various statutes and regulations in operating his truck, including on the day of the accident. He asserts that those statutory violations constitute negligence per se.

Defendant Dhillon also moves for summary judgment on this claim, arguing that none of the statues or regulations plaintiffs cites provide an independent right of action or specific duty sufficient to form the basis of a claim for negligence per se.

"Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence *per se*." *Chambers v. St. Mary's Sch.*, 82 Ohio St. 3d 563, 565 (1998). A finding that a defendant is liable for negligence per se "means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff.

It is not a finding of liability *per se* because the plaintiff will also have to prove proximate cause and damages." *Id.*[2]

Plaintiffs point to eight statutes or regulations that they argue defendant Dhillon violated. Violation of these laws will only constitute negligence per se if the statute or regulation established a "positive and definite standard of care" and that standard of care is relevant to this case.

Plaintiffs first highlight several regulations from the Federal Motor Carrier Safety Regulations (FMCSR) that they allege defendant Dhillon violated. However, I agree with defendant Dhillon that these regulations cannot form the basis for a finding of negligence per se. Another federal district court in Ohio recently found that the "violation of an administrative rule does not constitute negligence *per se*." *Parker v. Miller*, No. 2:16-CV-1143, 2018 WL 3743981, at *7 (S.D. Ohio) (quoting *Chambers.*, *supra*, 82 Ohio St. 3d at 568) (interpreting both federal and Ohio law). This is because a regulation is not legislatively enacted, and negligence per se only applies to duties set forth in legislation. *Chambers*, *supra*, 82 Ohio St. 3d at 565.

Plaintiffs then point to several Ohio statutes that they claim support a finding of negligence per se. First, they cite to Ohio Rev. Code § 4511.202. That provision requires drivers to operate their vehicles with "reasonable control." Because this is a "general duty statute" rather than a "specific duty statute," it cannot establish the basis for a claim of negligence per se. *Morris v. Gavan*, No. 1:08-CV-01436, 2009 WL 1921116, at *3 (N.D. Ohio) (Vecchiarelli, M.J.) (citing *Campbell v. Hall*, 1989 WL 29856 (Ohio App. 6 Dist.)).

---

[2] Plaintiffs have already conclusively established duty and breach here, as defendant Dhillon admitted he was at fault for the accident. Their negligence *per se* claim, then, does not change the result as to liability. It could, however, be relevant to punitive damages.

Plaintiffs next highlight two statutes that do not appear to apply to this case. Ohio Rev. Code § 4511.27 requires drivers to signal before passing other vehicles, and Ohio Rev. Code § 4513.20 requires drivers to maintain functioning brakes. Plaintiffs do not explain how either of these statutes is relevant to the accident here. They do not point to, and I cannot find, any evidence in the record indicating that defendant Dhillon failed to signal or that his brakes were not functioning properly. There is simply no evidence that he violated either of these statutes. Therefore, neither supports a finding of negligence per se.

Another statute that plaintiffs claim defendant Dhillon violated is Ohio Rev. Code § 4549.02(A)(1). This statute requires drivers to stop at the scene of an accident and exchange information with the other individuals involved. Plaintiffs claim that defendant Dhillon left the scene without doing so. Even accepting that allegation as true, Ohio Rev. Code § 4549.02(A)(1) does not provide a clear basis for negligence per se. An Ohio court that considered the issue observed, "[w]e are unaware of any Ohio case holding that violation of the [statute] constitutes negligence per se" and therefore declined to apply it in that case. *Johnson v. Helmus*, No. C.A. E-86-19, 1987 WL 12150, at *2 (Ohio Ct. App.). I likewise cannot locate any Ohio cases permitting a finding of negligence per se based on this statute, and plaintiffs do not identify any. I therefore decline to find that plaintiffs can base their negligence per se claim on Ohio Rev. Code § 4549.02(A)(1).

The final statute that plaintiffs reference is Ohio Rev. Code § 4511.33, which requires drivers to stay in their lane and change lanes only when they have determined they can do so safely. A violation of this statute constitutes negligence per se. *Wheeler v. Estes Exp. Lines*, 53 F. Supp. 3d 1032, 1038 (N.D. Ohio 2014) (citing *Orr v. Zeff*, No. C-790022, 1980 WL 352761, at *1 (Ohio Ct. App.)).

9

The only question, then, is if there is a dispute of material fact as to whether defendant Dhillon violated this statute. I find that there is not. While defendant Dhillon initially testified that Mr. Madera was at fault for the accident, he, in effect, recanted that testimony when he admitted through counsel that the accident was his fault. He does not now dispute that he crossed over into another lane to cause the accident with Mr. Madera.

I therefore find that plaintiffs have established their claim of negligence per se, and I grant plaintiffs' motion for summary judgment on that claim and deny defendant Dhillon's.

### 3. Respondeat Superior/Vicarious Liability

Plaintiffs also bring a claim for respondeat superior/vicarious liability against Express, Logistics, and Singh. They argue that because defendant Dhillon admitted he was negligent and because he was acting in the course of his employment with Express at the time of the accident, Express is vicariously liable for his actions. They further argue that Logistics and defendant Singh are liable under a piercing the corporate veil theory.

Express responds that plaintiffs have not established causation or damages, and therefore, it cannot be vicariously liable. Singh and Logistics both argue that they did not have an employment relationship with defendant Dhillon – his employer was Express.

"Under the principle of respondeat superior the employer is liable for damages caused by the negligence of his employ[ee] while engaged in the business of the former." *Elms v. Flick*, 100 Ohio St. 186 (1919).

There is no dispute here that Express was defendant Dhillon's employer. There is likewise no dispute that the accident occurred within the scope of the employment relationship. Therefore, if the jury finds that Dhillon was negligent, Express will be vicariously liable for that

10

negligence. Accordingly, I deny plaintiffs' motion for summary judgment because there are remaining issues of material fact regarding negligence.

Further, because I find that there are issues of fact as to piercing the corporate veil, which I explain below, I deny defendant Singh's and Logistics' motion for summary judgment on this issue.

### 4.  Strict Liability

Plaintiffs bring a claim for strict liability against only Express. Plaintiffs advance the same argument as to vicarious liability – Express is strictly liable because defendant Dhillon conceded negligence.

Express responds that plaintiffs have not established all the elements of negligence.

As I stated with respect to plaintiffs' claim for vicarious liability, there are issues of fact regarding defendant Dhillon's negligence. Therefore, I deny plaintiffs' motion for summary judgment as to strict liability.[3]

### 5.  Negligent Hiring, Training, and/or Supervision

Plaintiffs next bring a claim for negligent hiring, training, and/or supervision against Express, Logistics, and defendant Singh. Plaintiffs argue that defendant Dhillon was not qualified to operate a commercial vehicle, Express and defendant Singh knew he was not qualified, they failed to properly train him, and their negligence in hiring, training, and supervising Dhillon proximately caused Mr. Madera's injuries.

---

[3] It is unclear what plaintiffs' theory of strict liability is in this case. The parties do not devote much attention to it in briefing, and plaintiffs' allegations in the Amended Complaint do not provide additional clarity. Strict liability commonly applies in products liability cases and cases involving abnormally dangerous activities. This case involves neither. But because defendants do not challenge the sufficiency of plaintiffs' allegations in this regard, I decline to address it further.

Express responds that plaintiffs cannot satisfy one of the elements of their claim: namely, that the accident was reasonably foreseeable.

Defendant Singh and Logistics both argue that they cannot be held liable because there was no employment relationship between either of them and defendant Dhillon.

In Ohio, the elements of a claim for negligent training, negligent supervision, and negligent hiring are essentially the same. *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 678 (Ohio Ct. App. 2015). Plaintiffs must show: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining [or training or supervising] the employee as the proximate cause of plaintiff's injuries." *Id.*

Express does not challenge plaintiffs' ability to satisfy the first four prongs of this analysis. Rather, it focuses on foreseeability, which relates to the fifth prong, proximate cause. *Gay v. O.F. Mossberg & Sons, Inc.*, 2009-Ohio-2954, ¶ 56 (plaintiff must establish that negligence was the proximate and foreseeable cause of injury).

To succeed on a claim of negligent training, supervision, or hiring, plaintiffs must show that the employee's act was reasonably foreseeable. *Wagoner ex rel. Washburn v. United Dairy Farmers, Inc.*, No. C-990767, 2000 WL 1714252, at *1 (Ohio Ct. App.). In this case, that means plaintiffs must establish that the car accident was reasonably foreseeable to Express.

Reasonable foreseeability means that the employer knew, or should have known, of the employee's "propensity to engage in similar criminal, tortious, or dangerous conduct." *Id.*; *see also Ball v. Stark*, 2013-Ohio-106, ¶ 76 ("The foreseeability of harm usually depends on the defendant's knowledge of unreasonable risk," and liability only arises where the employee's

incompetence "would cause a reasonably prudent person to anticipate the employee's misconduct.").

Express claims that the accident was not foreseeable primarily because defendant Dhillon had not been in any accidents at the time Express hired him. Express further argues that there are no facts suggesting Dhillon was not properly licensed or qualified to drive, and plaintiffs cannot demonstrate that any of Dhillon's alleged statutory violations caused Mr. Madera's injuries. For example, his lack of proficiency in English did not cause the accident with Mr. Madera.

Plaintiffs respond that there is extensive evidence of Dhillon's lack of qualifications to operate a commercial vehicle: he did not receive proper training, he admitted to not understanding many federal safety regulations applicable to him, he was not proficient in English, he did not obtain his CDL legally, and he did not attend an accredited driving school. Plaintiffs assert "[i]t strains credulity to argue that it is not foreseeable that knowingly placing an unqualified and incompetent driver (Dhillon) behind the wheel . . . can result in an accident." (Doc. 83, pgID 1536).

Considering this evidence in light of the legal standard, I conclude that there is a genuine issue of material fact regarding the foreseeability of the accident. I believe that a jury could reasonably find that the accident was foreseeable, and it would likewise be reasonable to find that the accident was not foreseeable.

The relevant case law supports my determination. In cases related to negligent hiring, supervision, or training in the context of car accidents, Ohio courts and federal courts interpreting Ohio law have considered a myriad of factors. These factors include whether the driver had been involved in other accidents, whether the driver participated in regular training, whether the driver was properly licensed, whether the driver could speak English, whether the

13

employer conducted a background check of the employee, and whether the employer conducted a reasonable inquiry into the driver's abilities before hiring. *See Terek v. Finkbiner*, No. 3:14 CV 1391, 2015 WL 5542535, at *1 (N.D. Ohio) (Knepp, M.J.); *Boyd v. Smith*, No. 2:12-CV-814, 2014 WL 1050080, at *6 (S.D. Ohio); *Ball v. Stark*, 2013-Ohio-106, ¶ 77-79; *Schlegel v. Li Chen Song*, 547 F. Supp. 2d 792, 806-07 (N.D. Ohio 2008) (Katz, J.).

Here, defendants argue, and plaintiffs do not appear to contest, that defendant Dhillon had not been in any accidents prior to the one at issue in this case. That fact cuts in favor of Dhillon. However, that is not the only relevant factor. *See Schlegel*, *supra*, 547 F. Supp. 2d at 806 (to only consider driving history would "allow employers to hire unqualified employees to perform work that could place others in danger, so long as the employer was not aware of any adverse background facts."). There is evidence in the record that Dhillon did not understand the federal regulations he was required to follow, that he did not obtain formal or regular training, that his CDL may have been invalid, and that he was not proficient in English. Those are issues of material fact that bear on the ultimate determination of foreseeability.

And while a jury could reasonably find that the accident was foreseeable in light of Dhillon's potentially questionable qualifications, it could also reasonably find, as Express argues, that those issues had no bearing on Dhillon's propensity to become involved in an accident.

I therefore deny plaintiffs' and Express's motions for summary judgment as to negligent hiring, training, and/or supervision. I also deny defendant Singh's and Logistics' motions because there are issues of material fact as to their liability for the actions of Express.

## 6.  Punitive Damages

Plaintiffs next request summary judgment on the issue of punitive damages against defendant Dhillon, defendant Singh, Express, and Logistics. They argue that defendants were reckless and acted with conscious disregard, and therefore, I should allow punitive damages.

Defendants respond that this issue is premature, and I should not award punitive damages until there has been an award of compensatory damages. Alternatively, they argue that the facts here do not support an award of punitive damages.

I agree that plaintiffs' request for punitive damages is premature. There must be a finding of liability before punitive damages can be awarded. *See Lawson v. Dutch Heritage Farms, Inc.*, 502 F. Supp. 2d 698, 712 (N.D. Ohio 2007) (Gallas, M.J.) (declining to award punitive damages before the case proceeded to trial); *Cameron v. Children's Hosp. Med. Ctr.*, 250 F. Supp. 2d 848, 855 (S.D. Ohio 2002) (the question of punitive damages "is a determination to be made in a damages calculation if and when liability is determined."). I have not found any of the defendants liable for any of the claims in the Amended Complaint – I have, in large part, left those issues to the jury. Therefore, it would not be appropriate for me to consider punitive damages at this stage.[4]

I deny plaintiffs' motion for summary judgment on their punitive damages claim and likewise deny defendants' motions to the extent they ask me to determine that punitive damages are definitively not warranted in this case.

### 7.  Piercing the Corporate Veil/Alter Ego

Plaintiffs argue that I should pierce the corporate veil and hold defendants Dhillon and Singh individually liable because they created Logistics "as a chameleon carrier to carry on the

---

[4] Furthermore, I may not award punitive damages where there has been no award of compensatory damages. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St. 3d 77, 82 (1984). There has been no such award here.

busines[s] of Express after that entity shut down as a result of this lawsuit." (Doc. 66-1, pgID 1191).

Defendants argue that piercing the corporate veil is not an independent cause of action and hinges on there being a judgment on plaintiffs' claims that goes uncollected. Therefore, resolution of this issue is premature. Alternatively, defendants argue that plaintiffs cannot establish the necessary elements to pierce the corporate veil.

 I do not agree with defendants that it is too soon to address the issue of piercing the corporate veil. Courts regularly resolve this issue on summary judgment. *See*, *e.g.*, *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09CV01575, 2011 WL 3921718 (N.D. Ohio) (Pearson, J.) (evaluating whether to pierce the corporate veil on summary judgment); *Univ. Circle Rsch. Ctr. Corp. v. Galbreath Co.*, 106 Ohio App. 3d 835 (1995) (same).

Defendants cite *MidAmerican Distribution, Inc. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 683 (E.D. Ky. 2011) in support of their argument. Firstly, that case was governed by Kentucky law, not Ohio law. And the court there did not find that it was premature to address veil piercing on summary judgment; rather, it found that since it dismissed the underlying claims, there could be no liability through veil piercing. *Id.* Here, I have not dismissed the underlying claims. Therefore, it is appropriate for me to consider whether there are issues of material fact related to the veil piercing analysis, and if so, what those issues are.

Plaintiffs discuss both the piercing the corporate veil and alter ego doctrines in their briefs. While plaintiffs somewhat conflate the two concepts, they are, in fact, distinct. Veil piercing "ask[s] a court to hold *A* vicariously liable for *B*'s debt," while alter ego theory "asserts that *A* and *B* are *the same entity*; liability then is not vicarious but direct." *Int'l Union, United*

*Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302 (6th Cir. 2005) (emphasis in original).

My understanding of plaintiffs' arguments is that they seek to pierce the corporate veil and hold defendant Dhillon and defendant Singh personally liable for the debts of Express. Further, they seek to establish that Logistics is the alter ego of Express and therefore liable for its debts.

In Ohio, a court may pierce the corporate veil to hold individual shareholders liable where plaintiffs can show:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 289 (1993).

In *Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 513, the Ohio Supreme Court modified and slightly expanded this test, holding that to meet the second prong, a plaintiff must demonstrate "fraud, an illegal act, or similarly unlawful act." The court explained that this prong is satisfied where plaintiffs can show an "exceptional wrong." *Id.* at 514. A straightforward tort does not suffice. *Id.*

"Because of the delicate judgments involved in assessing the special facts in each case, and ultimately, in deciding whether the corporation has been used to an end subversive to its policy or when it would be unjust not to disregard the corporate entity, piercing the corporate veil is primarily a matter for the trier of fact." *State ex rel. DeWine v. S & R Recycling, Inc.*, 195 Ohio App. 3d 744, 753 (2011).

### A.  Alter Ego

17

The first prong of the *Belvedere* veil piercing analysis is essentially a statement of the alter ego doctrine. *Id.* To succeed on that theory, plaintiffs must show that Express and Logistics are "fundamentally indistinguishable." *Id.*

In determining whether a company is the alter ego of another company, "Ohio courts consider factors such as whether (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent." *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362-63 (6th Cir. 2008).

The Sixth Circuit has proposed the following additional factors:

> (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.

*Id.*

There is evidence of some of these factors in the present case. While defendant Dhillon testified that he maintains records for Logistics, he later admitted that he was unaware of which records he was required to keep. (Doc. 61-1, pgID 667, 670). Further, there is a question of fact as to Logistics' financial independence. A jury could reasonably infer that Logistics was relying on Express for its necessary capital in light of the fact that Logistics was sub-hauling loads for Express and received $150,000 worth of payments from Express. Additionally, Logistics and Express shared the same address: defendant Dhillon's home, and while defendant Dhillon was not an employee of both companies at the same time, it would not be unreasonable to conclude that he was de facto still working for Express even after he started Logistics. It likewise would not be unreasonable to determine that Express and Logistics were engaging in the same business enterprise, given that Logistics was hauling loads for Express.

18

Because there is a question of fact as to several of these factors, I decline to grant

summary judgment for plaintiffs or defendants on this issue.

### B.  Veil Piercing

I must next determine whether defendant Singh or defendant Dhillon can be held

personally liable for the debts of Express.

I will begin by evaluating whether to pierce the corporate veil between defendant Singh

and Express to hold Singh personally liable for its debts. In doing so, I will apply the three

*Belvedere* factors.

The first factor is whether Singh's control over Express was so complete that the

corporation had no separate existence of its own. Relevant to this factor is Singh's status as the

single shareholder and President of the company. (Doc. 77, pgID 1328); *Galbreath*, 106 Ohio

App. 3d at 840 (defendant's status as the sole shareholder and officer and director of his

company is relevant to the first prong). However, this is certainly not dispositive.

Other relevant considerations are:

> (1) grossly inadequate capitalization, (2) failure to observe corporate
> formalities, (3) insolvency of the debtor corporation at the time the
> debt is incurred, (4) shareholders holding themselves out as
> personally liable for certain corporate obligations, (5) diversion of
> funds or other property of the company property for personal use,
> (6) absence of corporate records, and (7) the fact that the corporation
> was a mere facade for the operations of the dominant shareholder(s).

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005).

Several of these factors are arguably satisfied here. I have already discussed the absence

of corporate records for Express. Further, Express ceased operations mere weeks after this

lawsuit was filed. Plaintiffs filed their complaint on July 2, 2019, and Express closed down on

July 20, 2019. (Doc. 1; Doc. 77, pgID 1332). Express is therefore now insolvent and unable to

pay any debts that it may owe in relation to this lawsuit. Additionally, a jury could conclude that

defendant Singh diverted assets in the amount of $150,000 from Express to fund his father's new company, Logistics.

On the other hand, there is no evidence that defendant Singh held himself out as personally liable for corporate obligations or that Express was grossly undercapitalized.

Ultimately, I find that there is sufficient evidence from which a jury could find that defendant Singh and Express were fundamentally indistinguishable, and there are issues of material fact as to the first prong of the *Belvedere* analysis.

To establish the second prong of the *Belvedere* analysis, plaintiffs must show that defendant Singh exercised control over Express in such a manner as to commit fraud, an illegal act, or similarly unlawful act against plaintiffs.

Plaintiffs have presented evidence that defendant Singh engaged in potentially unlawful activity. They claim that Singh did not ensure Dhillon had the proper qualifications or training to drive for his company. For example, Singh hired defendant Dhillon despite his lack of proficiency in English and referred him to an allegedly illegitimate driving school where he obtained an arguably invalid CDL. Most significantly, plaintiffs have presented evidence that Express made payments totaling $150,000 to defendant Dhillon after the accident and after Logistics began operations. A jury could conclude that defendant Singh did so not only to avoid paying higher insurance rates but also to avoid paying a potential judgment in this case.

I therefore find that summary judgment on the second prong of the *Belvedere* test is not warranted. *See Schlegel*, *supra*, 547 F. Supp. 2d at 804 (denying summary judgment on veil piercing claim where the defendant had potentially used "the shield of the corporate form to evade compliance with the Federal Motor Carrier Safety Act, which evasion tends to show a

conscious disregard for the safety of those (such as Plaintiff) who share the road with his truck drivers.").

The third prong of the *Belvedere* test is whether plaintiffs sustained an injury or unjust loss as a result of defendant Singh's actions. There are questions of fact on this prong as well – these actions may have caused Mr. Madera's physical injury, or they may have caused plaintiffs a financial injury to the extent there are insufficient funds to pay any judgment that is ordered in this case.

Because there are issues of material fact as to each of these three prongs, I find that a jury could reasonably conclude veil piercing is appropriate between Express and defendant Singh.

With respect to Express and defendant Dhillon, however, I find that there is insufficient evidence to support a veil piercing claim. Dhillon did not own Express, and there is no evidence that he exercised complete control over the company as is required to hold him personally liable for its debts. Dhillon was simply an employee who drove trucks for the company. Therefore, plaintiffs have failed to meet their burden as to a veil piercing claim between Express and defendant Dhillon.[5]

## Conclusion

It is, therefore,

ORDERED THAT

1. Plaintiffs' motion for summary judgment (Doc. 66) regarding Negligence (Count I) be, and the same hereby is, denied;

---

[5] To the extent plaintiffs seek to pierce the corporate veil between defendant Dhillon and Logistics, I reject that attempt as well. Plaintiffs do not point to any actions on the part of Dhillon that were fraudulent or illegal. They focus on Singh in that regard. Therefore, they cannot satisfy the *Belvedere* test and hold Dhillon personally liable through a veil piercing theory. He remains potentially liable, however, with respect to the claims for which plaintiffs sued him directly.

2. Plaintiffs' motion for summary judgment (Doc. 66) regarding Statutory Violations/Negligence Per Se (Count II) be, and the same hereby is, granted;

3.  Defendant Dhillon's motion for summary judgment (Doc. 78) regarding Statutory Violations/Negligence Per Se (Count II) be, and the same hereby is, denied;

4. Plaintiffs' motion for summary judgment (Doc. 66), defendant Singh's motion for summary judgment (Doc. 77), and defendant Logistics' motion for summary judgment (Doc. 79) regarding Respondeat Superior/Vicarious Liability (Count III), be and the same hereby are, denied;

5. Plaintiffs' motion for summary judgment (Doc. 66) regarding Strict Liability (Count IV) be, and the same hereby is, denied;

6. Plaintiffs' motion for summary judgment (Doc. 66), defendant Singh's motion for summary judgment (Doc. 77), Express's motion for summary judgment (Doc. 78), and defendant Logistics' motion for summary judgment (Doc. 79) regarding Negligent Hiring, Training, and/or Supervision (Count V), be and the same hereby are, denied;

7. Plaintiffs' motion for summary judgment (Doc. 66), defendant Singh's motion for summary judgment (Doc. 77), defendant Dhillon's and Express's motion for summary judgment (Doc. 78), and defendant Logistics' motion for summary judgment (Doc. 79) regarding Punitive Damages (Count VI), be and the same hereby are, denied; and

8. Plaintiffs may proceed on their alter ego/veil piercing theories against Logistics and defendant Singh but may not proceed on those theories against defendant Dhillon.

So ordered.

James G. Carr
Sr. U.S. District Judge

22